**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**BRYCE FINDLEY and JENNIFER FINDLEY,**

        **Plaintiffs,**

**v.**                                               **CIVIL ACTION NO. 2:24-CV-10
(KLEEH)**

**NORTH LIGHT SPECIALTY INSURANCE COMPANY,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT [ECF NOS. 57, 58, 59]

Pending before the Court are *Plaintiffs' Motion for Partial Summary Judgment on Claims for Common Law Bad Faith and UTPA Violations* [ECF No. 57]; *Plaintiffs' Motion for Partial Summary Judgment on Substantially Prevailing Claims* [ECF No. 58]; and *Defendant North Light Special Insurance Company's Motion for Partial Summary Judgment on Extra-Contractual and Punitive Damages Claims* [ECF No. 59]. For the reasons stated herein, Plaintiffs' partial motions for summary judgment [ECF No. 57, 58] are **DENIED** and Defendant's partial motion for summary judgment [ECF No. 59] is **GRANTED IN PART.**

### I.   PROCEDURAL HISTORY

Plaintiffs Bryce Findley and Jennifer Findley ("Plaintiffs" or "the Findleys") filed suit against Defendant North Light Specialty Insurance Company ("Defendant" or "North Light") in the Circuit Court of Barbour County, West Virginia on May 6, 2024. ECF

No. 1-1. Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, North Light removed the case to this Court on June 13, 2024, invoking diversity jurisdiction. ECF No. 1. Defendant filed its Answer to Plaintiffs' Complaint on June 18, 2024. ECF No. 2.

On May 2, 2025, Plaintiffs filed two motions for partial summary judgment, asking the Court to find that Defendant breached its common law duty of good faith and fair dealing and violated the West Virginia Unfair Trade Practices Act (UTPA") and to also find Plaintiff substantially prevailed on their insurance claim, to warrant their recovery of attorneys' fees. ECF Nos. 57, 58. Defendant responded in opposition to Plaintiffs' Motions on May 23, 2025 [ECF No. 61] and Plaintiffs replied in further support of their Motions on June 5, 2025 [ECF No. 63].

Defendant additionally moved for partial summary judgment on May 2, 2025, asking the Court to find that Plaintiffs did not substantially prevail in their insurance case and that Plaintiffs failed to put forth sufficient facts to show North Light acted in bad faith, violated the UTPA, or acted with actual malice to warrant punitive damages. ECF No. 59. Plaintiffs responded in opposition to Defendant's partial summary judgment motion on May 22, 2025 [ECF No. 60] and Defendant filed its reply briefing on June 3, 2025 [ECF No. 62].

The Motions are fully briefed and ripe for review.

2

## II.   <u>FACTUAL BACKGROUND</u>

On September 19, 2023, a fire occurred at Plaintiffs' home at 112 Gladeview Drive, Philippi, West Virginia (the "property"). ECF No. 57-1 at p. 1, ECF No. 59 at p. 2. Bryce and Jennifer Findley were not home at the time of the fire, but their son, Austin, was on their property working outside and reported the fire to emergency services. *Insurance Claim Diary*, ECF No. 57-2 at p. 4. The fire originated in Plaintiffs' living room. <u>Id.</u>; *West Virginia State Fire Marshal Incident Report*, ECF No. 59-2 at p. 22.

At the time of the fire, the property was insured by North Light, which provided $514,000 in dwelling coverage, $256,000 in personal property coverage, and twelve months of additional living expense ("ALE") coverage. *North Light Policy Declarations*, ECF No. 57-4; ECF No. 59-3. Jennifer Findley notified North Light of the fire on September 20, 2023, and North Light opened a claim the same day. ECF No. 57-2 at p. 4; *Insurance Claim Diary*, ECF 59-4 at p. 2. Originally, the claim for dwelling coverage was assigned to adjuster Kevin Mullins, the claim for personal property coverage was assigned to Staci Miller, and the claim for ALE was assigned to Charmaine Smith. *Dep. of Kevin Mullins,* ECF No. 57-5; *Dep of Staci Miller*, ECF No. 57-6, and *Dep. of. Charmaine Smith*, ECF No. 57-7.

On September 21, 2023, Mullins received a phone call from Assistant Fire Marshall Ayersman, in which he informed Mullins

that he was concerned about the fire and reported the Plaintiffs had experienced prior fire losses. ECF No. 59-4 at p. 6; ECF No. 57-2 at p. 26. Based upon this development, Mullins referred Plaintiffs' claim to North Lights Special Investigation Unit ("SIU") and Jeffrey Daniels was assigned as the SIU investigator. ECF No. 59-4 at p. 4; *Dep. of Jeffrey Daniels*, ECF No. 57-8. The purpose of an SIU referral is for the SIU investigator to "take control of the file and the investigation," and either deny the claim for fraud or return the claim to the claim office to be adjusted and paid. ECF No. 57-8 at pp. 37-38. On September 25, 2023, Daniels spoke with Ayersman and learned that the fire originated within a sectional couch and that the fire spread through a cold air return under the couch. ECF No. 59-4 at p. 6; ECF No. 57-2 at p. 38. Ayersman also told Daniels that Plaintiffs had been involved in six prior property fires and recommended North Light engage an engineer to determine the cause of the fire. Id. On September 27, 2023, Daniels also spoke to a SIU investigator from Erie, Plaintiffs' prior property insurer, who informed him of an SIU investigation regarding a fire on Plaintiffs' property in 2015. ECF No. 59-4 at p. 7; ECF No. 57-2 at p. 239. Though Erie paid the loss in 2015, the SIU investigator indicated the fire call was undetermined and the circumstances were questionable. Id.

North Light retained NEFCO Fire Investigations to perform an origin and cause ("O&C") investigation for the September 19, 2023

fire, and informed Plaintiffs of its plan to conduct an O&C investigation. ECF No. 57-2 at pp. 40, 232. Fire Investigator Timothy Iman completed the O&C inspection at the property on September 27, 2023, with Plaintiffs present. ECF No. 59-4 at p. 8; ECF No. 57-2 at p. 244. Iman confirmed that the fire originated from the sectional couch in the living room, and that there was a power strip with items plugged into it behind the couch. Id. Iman also reported that on September 19, 2023, shortly before the fire, Jennifer had returned home from a relative's residence to pick up food. Id. The fire occurred shortly after she left the property. Id. Daniels completed his investigations into the prior six fires by late September or early October, learning that each prior loss claims had been paid. ECF No. 57-8 at p. 72.

Iman conducted a second property inspection in October and reported to Daniels that he secured samples from the debris to determine if an accelerant was used to cause the fire.  ECF No. 59-4 at p. 10. He also indicated that more work still needed to be done, but believed the circumstances were suspicious. ECF No. 57-2 at p. 273; ECF No. 59-4 at p. 9. In November, Daniels noted in the claim diary, following a joint inspection, that arson nor accidental ignition sources had been ruled out as the cause of the fire. ECF No. ECF No. 59-4 at p. 11; ECF No. 57-2 at p. 305. The electrical engineer, Robert Kimmick, did not believe the couch caused the fire and there was no evidence of a rodent act. Id. The

5

electrical engineer completed his inspection of the couch around November 20, 2023, and determined there was no evidence to indicate it caused the fire. ECF No. 59-4 at p. 12; ECF No. 57-2 at. p. 315. Daniels further reported that accidental sources of ignition had been eliminated, which indicated the possibility that the fire was set. Id. Daniels proceeded to schedule examinations under oath "EUOs" for Plaintiffs based upon the given exposure and prior fires. Id.

While Daniels completed the SIU investigation, North Light continued adjusting Plaintiffs' fire loss claim. For example, Mullins proceeded with the adjustment process by evaluating and preparing an estimate to repair the damage to the Findleys' home. ECF No. 57-1 at p. 4; ECF No. 59-1 at p. 6; see ECF No. 59-5. Between October 30, 2023, and April 15, 2024, adjuster Smith sent periodic letters to Plaintiffs advising them that North Light's investigation was ongoing. ECF No. 58-9.

Represented by counsel, Plaintiffs sat for the EUOs on December 13, 2023, and denied any involvement with the fire. *Bryce Findley EUO*, ECF No. 57-10; *Jennifer Findley EUO*, ECF No. 57-11. During her EUO, Jennifer provided new information in which she believed an iPad and a vape pen may have been plugged into their couch's charging station on the day of the fire. ECF No. 57-10; ECF No. 59-6 at p. 3. In January 2024, the transcripts from the EUOs were provided to electrical engineer Kimmick for further

6

evaluation. Kimmick issued a report dated April 1, 2024, in which he noted that no iPad or vape remains were found at the scene, or in the evidence. *RDA April 1 Report*, ECF No. 59-7 at p. 9. Kimmick reported, in part:

> The electrical items that were found in the area of origin were examined and ruled out as ignition sources. Several components of the sectional couch were not recovered and cannot be ruled out as the ignition source of the fire. Ms. Findley testified that an iPad and a vape pen were located on the couch; however, no remains of either of these items were recovered. Therefore, an iPad or vape pen cannot be ruled out as an ignition source of the fire.
>
> An incendiary cause of the subject fire was hypothesized by Mr. Iman and by the WV State Fire Marshall Office. This hypothesis cannot be ruled out.
>
> Because multiple cause hypotheses cannot be ruled out, the cause of this fire cannot be determined to a degree of engineering certainty.

Id. at p. 15.

On April 5, 2024, Plaintiffs' counsel sent Defendant's counsel two estimates for restoration and rebuild of Plaintiffs' property and requested that Plaintiffs be paid "the benefits due and owing under the homeowner policy." *April 5, 2024 Letter from Traci Cook to Brent Kesner*, ECF No. 57-12; ECF No. 59-8. Both estimates were for amounts in excess of the dwelling coverage limit, including estimates for foundation repairs: Rebuilder estimate for $578,71.81 and City Window & Construction estimate

7

for $788,484.18. Id. In response to the estimates, North Light engaged engineer Jordan Bryan to complete an inspection of the property on May 3, 2024. *May 8, 2024 Forte Report*, ECF No. 59-9. Mr. Bryan concluded in his May 8, 2024, report:

> The structural integrity of the steel beams, steel pipe columns, and the exterior basement walls in the basement living room were not compromised as a result of the fire.

Id. Thus, the house was repairable.

While North Light was waiting for Mr. Bryan's report, Plaintiffs filed the subject lawsuit in the Circuit Court of Barbour County, West Virginia on May 6, 2024. North Light continued investigating and adjusting Plaintiffs' claims. On August 26, 2024, adjuster Smith sent an incorrect form letter directly to Plaintiffs, which inaccurately reported the status of their claim and repairs, and stated Plaintiffs' ALE benefits would be ending. ECF No. 57-14. Mullins submitted his estimate for dwelling coverage benefits for approval on September 20, 2024. ECF No. 57-5 at pp. 74-75. On October 7, 2024, Plaintiffs' counsel emailed defense counsel demanding payment of benefits and an estimate of damages which defense counsel previously agreed to provide. *October 2024 email from Bordas to Kesner*, ECF No. 57-17. On December 3, 2024, Defendant's counsel sent Plaintiffs' counsel a copy of "Allstate's Summary of the Findley Claim for Loss/Damage to the Unscheduled Personal Property." ECF no. 57-18.

Ultimately, North Light paid out $57,605.72 for Plaintiffs' personal property claim on November 14, 2024, and $459,963.75 for the dwelling property claim on December 20, 2024.[1] ECF Nos. 59-11, 59-12. Additionally, North Light extended Plaintiffs' ALE coverage for an additional 12-month period.

### III. **LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (citations omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some

---

[1] These dates reflect the dates on the checks issued to Plaintiffs. Plaintiffs received the checks on or about December 3, 2024, and December 30, 2024. See ECF No. 57-1.

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). At its core, the summary-judgment process examines whether a trial is needed. See id. at 250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"When faced with cross-motions for summary judgment, the court must review each motion on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation and internal quotation marks omitted). The same standards of review apply when both parties file motions for summary judgment. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment — even where . . . both parties have filed cross motions for summary judgment.").

## IV.  DISCUSSION

10

## A. Plaintiffs' Claim for Common Law Bad Faith

Plaintiffs' and Defendant's Motions for Partial Summary Judgment as to the Common Law Bad Faith claim are **DENIED** [ECF Nos. 57, 59].

"A first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured."  Syl. Pt. 2, Loudin v. Nat'l Liab. & Fire Ins. Co., 716 S.E.2d 696 (W. Va. 2011).  An insured first party has the right "to bring a bad faith cause of action against his/her insurer under the common law and the West Virginia Unfair Trade Practices Act."  Id. at 700.

"There is undoubtedly 'a common law duty of good faith and fair dealing running from an insurer to its insured.'" Shaffer v. Nat'l Health Ins. Co., 2018 WL 1995525, at *2 (N.D.W. Va. Apr. 27, 2018) (quoting Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d 893, 96  (W. Va. 1998) (citing Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W. Va. 1986)). "An insurance carrier has a duty, once a first-party policyholder has submitted proof of a loss, to promptly conduct a reasonable investigation of the policyholder's loss based upon all available information." Sellman v. Safeco Ins. Co. of Am., 2022 WL 4598571, at *5 (N.D.W. Va. July 25, 2022) (quoting Syl. Pt. 3., Miller v. Fluharty, 500 S.E.2d 310 (W. Va. 1997)) (declining to grant summary judgment on common law

bad faith claim because genuine issues of fact existed as to the reasonableness of defendant's offer of settlement, investigation, negotiations, and general conduct during the handling of plaintiffs' claim).

"[T]he common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship." Grubbs v. Westfield Ins. Co., 430 F. Supp. 2d 563, 567 (N.D.W. Va. 2006) (quoting Elmore, 504 S.E.2d at 897).

Accordingly, "the bad faith claim is necessarily subsumed within, and derivative of, the underlying contractual claim." Snodgrass v. Hartford Underwriters Ins. Co., 2026 WL 103476, at *3 (S.D.W. Va. Jan. 14, 2026). Furthermore, granting summary judgment on a bad faith claim would be improper when a breach of contract claim survives summary judgment. See Id. (citing Covol Fuels No. 4, LLC v. Pinnacle Min. Co., LLC, 785 F.3d 104, 114–15 (4th Cir. 2015).

Here, Plaintiffs assert they are entitled to summary judgment on their claim for common law bad faith because North Light breached its duty of good faith and fair dealing as a matter of law. ECF No. 57-1 at p. 12. In support of their position, the Findleys state the evidence shows (1) North Light took eight months to investigate the cause of the house fire, but found no affirmative evidence of arson; (2) North Light and its retained

fire investigator waited four months after collecting evidence to finalize its conclusion that the fire's cause was undetermined and it could not show the house fire was the Plaintiffs' fault; (3) SIU Investigator Daniels completed his investigation into the Findleys' prior house fires in October 2023 and did not find evidence from that portion of his investigation to support Plaintiffs were involved in causing the subject house fire; (4) North Light did not make a coverage determination until May 23, 2024; (5) North Light provided little information on the status of their claim and the assessment of their damages, while the fire was being investigated; (6) a North Light adjuster sent an incorrect form letter directly to Plaintiffs, after they retained counsel, with incorrect information about repairs and the duration of their ALE benefits; (7) Claim Agent Mullins' investigation into Plaintiffs' dwelling loss included delays and mistakes; and (8) North Light was not sufficiently responsive to Plaintiffs' attorneys' coverage demands and North Light's December 30, 2024 payment was not for policy limits. Id. at pp. 12-14.

In contrast, Defendant also argues it is entitled to summary judgment because Plaintiffs cannot establish North Light acted in bad faith. ECF No. 59-1. First, Defendant argues there is no underlying breach of contract because it issued payment for the Findleys' contractual claim. Id. at p. 11. Second, North Light argues there is no bad faith claim because it never denied

13

Plaintiffs' claim, and Plaintiffs filed suit before North Light's investigation was complete. Id. North Light retained an expert to evaluate whether the Findleys' property was a constructive total loss because Plaintiffs submitted two estimates indicating the repairs would cost more than the property's value. Id. at p. 13. The expert inspected the property on Friday, May 3, 2024, and Plaintiffs filed suit on Monday, May 6, 2024, before North Light finished determining coverage and the extent of the Plaintiffs' damages. Id.

Further, Defendant disputes that its investigation was unwarranted or delayed the claim payment too long, because Plaintiffs had multiple prior fire losses, including three separate fire losses at the subject property. Id. Defendant further supports its position to investigate because the West Virginia Fire Marshal found the subject fire to have been intentionally set. Id. North Light contends it began its investigation quickly, did a thorough investigation, and continued to pay Plaintiffs' additional living expenses while the investigation was underway.

Here, the record before the Court clearly reflects disputes of material fact regarding the reasonableness of Defendant's investigation, negotiations, and general conduct during the handling of Plaintiffs' claim. Though Plaintiffs show that it took over a year for the property claim to be paid, Defendant sets forth evidence of its investigation and the reasons for its conduct. As

14

such, these are issues for a jury, and not for this Court, to resolve. Accordingly, this Court declines to grant summary judgment as to plaintiffs' common law bad faith claim -in favor of either party.

**B. Plaintiffs' Claim under Unfair Trade Practices Act**

An insured first party has the right "to bring a bad faith cause of action against his/her insurer under the common law and the West Virginia Unfair Trade Practices Act." Loudin v. Nat'l Liab. & Fire Ins. Co., 716 S.E.2d 696, 700 (W. Va. 2011).  The Unfair Trade Practices Act ("UTPA"), in W. Va. Code § 33-11-4, sets forth a list of "unfair methods of competition and unfair or deceptive acts or practices in the businesses of insurance[.]" Specifically, W. Va. Code § 33-11-4(9) prohibits unfair claim settlement practices. To establish a cause of action under § 33-11-4(9), a plaintiff "must demonstrate that the insurer (1) violated the UTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice." Holloman v. Nationwide Mut. Ins. Co., 617 S.E.2d 816, 823 (W. Va. 2005).

"[E]ven though W.Va. Code § 33-11-4(9) requires more than a single isolated violation in order to show a general business practice, a claimant may produce sufficient evidence of this in a single claim." Elmore, 504 S.E.2d at 902. See Dodrill v. Nationwide Mut. Ins. Co., 491 S.E.2d 1, 12-13 (W. Va. 1997) ("separate,

discrete acts or omissions, each of which constitute violations of different sub-paragraphs of W. Va. Code § 33-11-4(9), may indeed demonstrate a 'general business practice' in the handling of a single claim, the focus of which would tend to show frequent and rather general disregard for the several proscriptions separately set out in the relevant statute."). "The [West Virginia] Supreme Court of Appeals has explained 'that the reasonableness of an insurance company's conduct [under the WVUTPA] "ordinarily is a question of fact for the jury" that should not be determined as a matter of law by a trial court.'" White v. Am. Gen. Life Ins. Co., 651 F. Supp. 2d 530, 547-48 (S.D.W. Va. 2009) (quoting Hicks ex rel. Saus v. Jones, 617 S.E.2d 457, 465 (W. Va. 2005)).

Plaintiffs assert that North Light's conduct violated multiple sub-paragraphs of W. Va. Code § 33-11-4(9) along with the corresponding West Virginia Insurance Commissioner's Rules, W. Va. C.S.R. § 114-14-1, *et seq*. ("ICR"). ECF No. 57-1 at p. 16.

West Virginia Code § 33-11-4(9), in relevant part, states:

(9) Unfair claim settlement practices.—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

16

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e)  Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g)  Compelling  insureds  to  institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application; and

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

W.Va. Code §§ 33-11-4(9)(a)-(h), & (n). Plaintiff relies on the same facts to support the UTPA violations, as those which they argue give rise to the common law bad faith claim. ECF NO. 57-1 at p. 18. Plaintiff contends that North Light's separate and discrete

17

acts or omissions committed over the span of the claim, represent the "habit, custom, usage, or business policy" of North Light. Id. at p. 20 (quoting Dodrill, 491 S.E.2d at 13-14).

Conversely, Defendant moves for summary judgment on the UTPA claims because Plaintiffs failed to show a "general business practice" that is violative of the UTPA. ECF No. 59-1 at p. 19. Rather, North Light contends there is no evidence that it violated any provision of the UTPA while handling the Findleys' claim. Id. at p. 20. Rather, Defendant asserts the evidence shows North Light properly handled Plaintiffs' claim, conducted a reasonable investigation, and timely responded to all pertinent communications. Id. at p. 19. For example, North Light puts forth evidence that it promptly began investigating Plaintiffs' claim and sought information regarding the damage and the fire's cause within a few days. Id. Defendant further disputes that liability ever became clear to support a W. Va. Code § 33-11-4(9)(f) violation because Plaintiffs filed suit before Defendant completed its investigation, or that it ever failed to respond in a timely fashion. Id.

In its response briefing to Plaintiffs' motion for summary judgment, Defendant also raises the question of Plaintiffs' standing to bring UTPA claims under subsections (b),(c),(d),and (f) of § 33-11-4(9). In doing so, Defendant relies upon cases in the Northern District of West Virginia and their application of

18

the Supreme Court of Appeals of West Virginia's holdings in State ex rel. W. Virginia Mut. Ins. Co. v. Salango, 866 S.E.2d 74 (2021) and State ex rel. State Auto Prop. Ins. Companies v. Stucky, 806 S.E.2d 160 (2017). ECF No. 61 at pp. 23-24.

In their reply briefing, Plaintiffs distinguish the Stucky and Salango holdings because those cases regarded liability insurance policies and not a first party property insurance policy. ECF No. 63 at pp. 62-63. Regardless, Plaintiffs contend their UTPA claim is still viable because it raises violations of other subsections of § 33-11-4(9). Id.

"The common thread through sections (b), (c), (d), and (f) is that they do not create duties for liability insurers toward their insureds." Salango, 866 S.E.2d at 82 (finding a first party insured lacked standing to bring UTPA claims under § 33-11-4(9)(b),(c),(d), and (f)). The Salango holding expanded upon the holding in Stucky, in which the West Virginia Supreme Court determined a first party insured under a liability policy lacked standing to bring a UTPA claim under § 33-11-4(9)(b) and (f) because the subsections were "designed to protect plaintiffs who seek liability-related damages from an insured, and are not designed to protect the insured." Stucky, 806 S.E.2d at 166.

Plaintiffs' argument that these holdings are limited to liability insurance policies has been addressed by Judge Groh and Judge Bailey in this District. See Woods v. Beazley Ins. Co., 2024

19

WL 4800593 (N.D.W. Va. July 16, 2024); <u>Bonnieview Apostolic Chapel v. Guideone Specialty Mut. Ins. Co.</u>, 2024 WL 4801855 (N.D.W. Va. June 18, 2024).

In <u>Woods</u>, Judge Bailey assessed whether a plaintiff had standing to sue under the UTPA for denials of coverage pertaining to two health care policies issued to him. 2024 WL 4800593, at *1. In rejecting Plaintiff's distinction that <u>Stucky</u> and <u>Salango</u> related to liability insurance policies rather than healthcare policies, Judge Bailey ruled that the alleged violations of unfair claim settlement practices enumerated within § 33-11-4(9)(b)-(d) could not survive because the plaintiff lacked standing. <u>Id.</u> at *5. "In both cases, an insured was bringing statutory first-party bad faith claims against its insurer, which is exactly what plaintiff is doing in this matter." <u>Id.</u> (dismissing plaintiff's claim to the extent it relied on subsections (b), (c), and (d)).[2]

In <u>Bonnieview Apostolic Chapel</u>, Judge Groh assessed whether plaintiffs had standing to sue under the UTPA for the denial of an underinsured motorist claim. 2024 WL 4801855, at *1. Therein, Judge Groh was similarly unpersuaded by plaintiffs' arguments that

---

[2] The Court recognizes that courts in the Southern District of West Virginia have reach opposite conclusions on this issue. <u>Compare</u> <u>Dickens v. Ellison</u>, 811 F. Supp. 3d 784, 789-90 (S.D.W. Va. 2025) (finding the plaintiffs lacked standing to allege claims under West Virginia Code sections 33-11-4(9)(b), (c), (d), or (f) against their underinsured motorist insurance provider) <u>with</u> <u>Snodgrass v. Hartford Underwriters Ins. Co.</u>, 2026 WL 103476, at *3 (S.D.W. Va. Jan. 14, 2026) (declining to apply the holdings in <u>Stucky</u> and <u>Salango</u> to a property insurance dispute).

Stucky and Salango were limited to cases involving claims under a liability policy, rather than first-party underinsured motorist claims.  Id. at * 2. Judge Groh held that the insurer owed no duties to the Plaintiffs under subsections (b), (c), (d), and (f) and thus the plaintiffs lacked standing to assert claims against their insurer under § 33-11-4(9)(b), (c), (d), and (f). Id. at *3 (dismissing plaintiffs' UTPA claim to the extent it relied upon those subsections of § 33-11-4(9)).

Here the Court agrees with North Light's standing arguments and adopts the reasoning of its sister courts in the Northern District of West Virginia. The term "claim" as used in the § 33-11-4(9)(b), (c), (d), and (f) refers to an effort by a third party to recover money from the insured – not a first party recovering money from its insurer. Thus, Plaintiffs lack standing to sue North Light under § 33-11-4(9)(b), (c), (d), and (f). Accordingly, Defendant's motion for summary judgement [ECF No. 59] is **GRANTED IN PART** and the Court **DISMISSES** Plaintiffs' UTPA claim to the extent the UTPA claim relies upon § 33-11-4(9)(b)-(d), and (f).

However, Plaintiffs allege additional violations of § 33-11-4(9) and improper business practices to support their statutory bad faith claim. As with Plaintiffs' common law bad faith claim, the evidence in the record raises genuine issues of material fact which precludes summary judgment in either parties' favor regarding the alleged violations under W.Va. Code §§ 33-11-

21

4(9)(a),(e),(g),(h), and (n). Accordingly, the reasonableness of Defendant's conduct under the UTPA is a question of fact for the jury. Thus, Plaintiffs' partial motion for summary judgment as it pertains to their statutory bad faith claim [ECF No. 57] is **DENIED** and Defendant's partial motion for summary judgment [ECF No. 59] as to the surviving portions of the UTPA claim is **DENIED.**

### C. Plaintiffs' Claim for Attorneys' Fees

Plaintiffs move the Court to find as a matter of law that they substantially prevailed on their claim for coverage benefits and thus are entitled to recover fees, expenses, and general damages for annoyance, aggravation, and inconvenience. ECF No. 58-1. In contrast, Defendant seeks a ruling from the Court that Plaintiffs are not entitled to extra-contractual damages because Plaintiff did not substantially prevail on their coverage claim and failed to show their attorneys' fees were necessary. ECF No. 59 at pp. 16-17.

"Under West Virginia's Hayseeds doctrine, a policyholder seeking coverage under an insurance policy who 'substantially prevails' in a suit against their insurer is entitled to a damages award for net economic loss and aggravation and inconvenience from the delay in receiving coverage, as well as attorney's fees." Ramaco Res., LLC v. Fed. Ins. Co., 74 F.4th 255, 264 (4th Cir. 2023) (citing Syl. Pt. 1, Hayseeds, 352 S.E.2d at 74); Sellman v. Safeco Ins. Co. of Am., 2024 WL 2843014, at *3 (4th Cir. June 5,

2024). First party insurance claimants have the right to recover Hayseed damages. Hadorn v. Shea, 456 S.E.2d 194, 196 (W. Va. 1995)

"An insured 'substantially prevails' in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount." Syl. Pt. 1, Jordan v. Nat'l Grange Mut. Ins. Co., 393 S.E.2d 647, 647–48 (1990). "When determining whether a policyholder has substantially prevailed, 'a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds.'" Sellman, 2024 WL 2843014, at *3 (4th Cir. June 5, 2024) (quoting Miller v. Fluharty, 500 S.E.2d 310, 322 (W. Va. 1997)). "While insurers may not cause undue delay, they are entitled to some time to investigate the claim." Id. at *3.

If an insured is found to have substantially prevailed, they may recover attorneys' fees  "as long as the attorney's services were necessary to obtain payment of the insurance proceeds." Id. As such, "the insured must show that but for his or her attorney's services such settlement would not have been reached, in light of the undue delay in investigating the claim." Jordan, 393 S.E.2d at 652. See also Bristol Springs Custom Homes, LLC v. Argo Grp. US, Inc., 2024 WL 5357166, at *5 (N.D.W. Va. Oct. 31, 2024) (denying

summary judgment because a genuine issue existed as to whether the plaintiff's attorney's services were necessary to obtain payment of the insurance proceeds).

Plaintiffs argue they are entitled to Hayseed damages because they made a pre-suit demand "for the benefits to which they were entitled" and North Light did not pay the dwelling coverage benefits until December 30, 2024. ECF No. 58-1 at p. 13. Plaintiffs assert there is no dispute that they substantially prevailed because (1) Defendant took over eight months to investigate the cause of the fire and found no affirmative evidence of arson; (2) Defendant waited four months after collecting evidence to conclude it could not fault Plaintiffs for the fire; (3) Defendant did little to adjust Plaintiffs' property claim while it investigated the fire's cause and provided little information on the claim's status; (4) North Light sent a form letter with inaccurate information, which threatened to cut off Plaintiffs' ALE benefits; (5) authority was not requested to pay the dwelling coverage until December 13, 2024 despite the estimate being finalized no later than September 20, 2024; and (6) North Light paid Plaintiffs the insurance benefits approximating those demanded pre-suit. ECF Nos. 58-1 at pp. 13-15.

Defendant disputes that Plaintiffs substantially prevailed in the underlying coverage claim. ECF No. 59-1. Looking at the totality of the negotiations, Defendant points to the fact that

24

North Light completed an inspection to determine whether Plaintiffs' property was a constructive total loss three days before Plaintiffs filed suit. Id. at p. 13. Defendant further contends that Plaintiffs fail to point to a specific demand that it refused to pay. North Light justifies the length of its investigation and the delay of payment, in part, on Plaintiffs prior fire history, including three fires at the subject property, and the Fire Marshall's assessment that the fire was intentionally set. Id. Further, even if Plaintiffs could show they substantially prevailed, Defendants argue they cannot prove the attorney services were necessary to recover the amount received because North Light's investigation of the claim was still underway when Plaintiffs filed suit . Id. at pp. 16-17.

As with Plaintiffs' claims for breach of contract and bad faith, disputes of material facts exist which preclude this Court from determining as a matter of law whether Plaintiffs substantially prevailed in their coverage claim or whether it was necessary for them to retain their attorneys. Though Plaintiffs set forth facts that they were not paid their dwelling coverage until they filed suit, Defendants also set forth facts to support that it could not pay Plaintiffs' claim, before the subject suit was filed, because the claim was still under investigation and damages were still being assessed. Accordingly, whether Plaintiffs are entitled to Hayseed damages is a question of fact for the jury

and the parties summary judgment motions [ECF Nos. 58, 59] are **DENIED** on this ground.

### D. Plaintiffs' Claim for Punitive Damages

Defendant moves for the Court to dismiss Plaintiffs' claim for punitive damages because Plaintiffs cannot establish as a matter of law that North Light acted with "actual malice." ECF No. 59-1 at p. 21.

Under West Virginia law, "punitive damages for failure to settle a property dispute shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process." Hayseeds, Inc. 330, 352 S.E.2d at 80; Raines v. Westfield Ins. Co., 2023 WL 5490161, at *9 (S.D.W. Va. Aug. 24, 2023); Medley v. State Farm Fire & Cas. Co., 2024 WL 4792503, at *4 (S.D.W. Va. Nov. 14, 2024). "Actual malice" is defined in these instances as a situation in which "the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." Id. at 80-81. "Unless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury." Id. at p. 81. The West Virginia Supreme Court intended this "bright line standard" to be "highly susceptible to summary judgment for the defendant." Id. Further, "[t]he Hayseeds 'actual malice' standard has been held to apply to

26

punitive damages sought in relation to alleged violations of the UTPA." Raines, 2023 WL 5490161, at *9.

Defendant asserts that Plaintiffs have not presented any evidence that North Light had an improper motive for how it handled Plaintiffs' claim. ECF No. 59-1 at p. 22. Rather, Defendant contends that the record supports it had a valid reason for seeking to investigate the cause of Plaintiffs' fire and that it was actively seeking information to evaluate Plaintiffs' claim up until the time Plaintiffs filed suit. Id. Plaintiffs argue that genuine issues of material fact exist as to whether Defendant's conduct rises to the level of actual malice. ECF No. 60 at p. 24.

The Court agrees with the Defendant that Plaintiffs failed to establish an entitlement to punitive damages. The conduct which Plaintiffs base their claims falls into the category of "negligence, lack of judgment, incompetence, or bureaucratic confusion" – at best. The Court finds that no evidence has been presented to show that the Defendant's conduct rises to the level of actual malice, thereby precluding the Plaintiffs from obtaining punitive damages. Defendant's Motion for Summary Judgment is thus **GRANTED** [ECF No. 59] on this ground and Plaintiffs' claim for punitive damages is **DISMISSED**.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' partial motions for summary judgment [ECF No. 57, 58] are **DENIED**. Defendant's partial

motion for summary judgment [ECF No. 59] is **GRANTED IN PART** as it pertains to punitive damages and Plaintiffs' UTPA claim to the extent it relied upon § 33-11-4(9)(b)-(d), and (f) and **DENIED IN PART** on all other grounds. Plaintiffs' claim for punitive damages is **DISMISSED** and Plaintiff's claim under the UPTA is **DISMISSED** to the extent it relied upon § 33-11-4(9)(b)-(d), and (f).

A new pretrial and trial date will be set by separate order. The Court further **DENIES WITHOUT PREJUDICE AND WITH LEAVE TO REFILE** the pending motions in limine [ECF Nos. 70-75]. The parties may re-file or file new pretrial motions in accord with the new scheduling order and in accord with the Court's rulings herein.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  March 31, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA